UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONWAY MACKENZIE,

     Plaintiff/Counter-Defendant,         Case No: 19-10945

v.                                     Judge Matthew F. Leitman

ROBERT BARNETT,            Magistrate Judge David R. Grand

     Defendant/Counter-Plaintiff.

| | |
|---|---|
| Thomas G. Kienbaum (P15945)<br>Ryan D. Bohannon (P73394)<br>KIENBAUM HARDY VIVIANO<br>PELTON & FORREST, P.L.C.<br>Attorneys for Plaintiff/<br>Counter-Defendant<br>280 N. Old Woodward Ave., Suite 400<br>Birmingham, Michigan 48009<br>(248) 645-0000<br>tkienbaum@khvpf.com<br>rbohannon@khvpf.com | Deborah L. Gordon (P27058)<br>DEBORAH GORDON LAW<br>Attorney for Defendant/<br>Counter-Plaintiff<br>33 Bloomfield Hills Parkway, Ste. 220<br>Bloomfield Hills, Michigan 48304<br>(248) 258-2500<br>dgordon@deborahgordonlaw.com<br><br>Edward D. Buckley<br>  (Georgia Bar No. 092750)<br>Anita K. Balasubramanian<br>  (Georgia Bar No. 372029)<br>Buckley Beal, LLP<br>Attorney for Defendant/Counter-<br> Plaintiff<br>600 Peachtree Street NE, Suite 3900<br>Atlanta, GA 30308<br>(404) 781-1100<br>edbuckley@buckleybeal.com |

**Plaintiff's Reply Brief In Support Of Its Motion to Compel Arbitration Of All Employment-Related Counterclaims, Or To Dismiss Counterclaims As Time-Barred or for Failure to State a Claim**

Barnett twice agreed to arbitrate claims "arising out of [his] employment or the termination of [his employment]." His response brief now concedes that his counterclaims arise out of his employment,[1] *and* that he was "totally disabled" under CMI's disability policy because he was "unable to perform the material and substantial duties" of his job. R. 35, Pg ID 1594, 1598. Had it not been for Barnett's inability to do his job, the stock issue would never have arisen. Barnett's termination from employment is thus the key event driving every one of Barnett's counterclaims.

Barnett nevertheless resists arbitration by putting the cart before the horse, arguing—in a case where he seeks compensatory, emotional distress, and punitive damages arising out of his termination—that one minor aspect of his purported damages (the loss of stock) should be deemed paramount, such that the Shareholder Agreement ("SA") should fully override the Employment Agreements ("EAs"). In so doing, he simply ignores controlling Michigan law on when an earlier contract will be deemed superseded by a later contract—case law that fully supports CMI's position. He likewise does not dispute that if the EAs have not been superseded, they clearly and unmistakably call for the arbitrator to decide arbitrability of all claims in

---

[1]Barnett's "concession" arises out of a too-clever-by-half argument that the arbitration agreement must not apply because CMI filed its complaint in a court (R. 35, Pg ID 1598); this, of course, ignores that CMI's only cause of action is for a declaratory judgment that its SA itself is enforceable, and did not ask the Court to find that it lawfully terminated Barnett or any other employment-related issue specific to Barnett. Barnett injected those claims into this lawsuit via his counterclaims, and those are the arbitrable claims at issue.

light of their adoption of AAA's Arbitration Rules. The Court should compel arbitration of all the counterclaims.

### A. The SA Does Not Supersede Or Abrogate the EAs' Arbitration Clauses.

Plaintiff's argument for avoiding arbitration, at bottom, is a simplistic one: he claims that because the SA says that "any action brought in connection with [the SA] or the transactions contemplated by [the SA] must be brought in a court of competent jurisdiction sitting in Oakland County, Michigan or in the United States District Court for the Eastern District of Michigan," this is inconsistent with the parties' earlier contract calling for arbitration and nullifies the EAs. R. 35, Pg ID 10-11; R. 30-6, Pg ID 1407. This premise is fundamentally false, and—as Judge Edmunds and Judge Roberts of this Federal District recently observed—has been rejected in several federal circuits. *Concrete Jungle, LLC v. ICON Comm'l Lending, Inc.*, 2017 WL 4535916, at *12 (E.D. Mich. Oct. 11, 2017) ("[c]hoice-of-forum clauses are not inconsistent with, but rather complementary to arbitration provisions"); *Spartech CMD, LLC v. International Automotive Components Group North America, Inc.*, 2009 WL 440905, *7 (E.D. Mich. Feb. 23, 2009) (same).

*Personal Security & Safety Systems Inc. v. Motorola Inc.*, a case relied on by Judge Roberts in *Spartech* and Judge Edmonds in *Concrete Jungle,* is most helpful here. In that case, a licensing agreement between the parties included an arbitration clause. Their subsequent stock purchase agreement did not, but instead contained a

forum selection clause. 297 F.3d 388, 389 (5th Cir. 2002). The party resisting arbitration argued—just as Barnett does here—that the stock agreement foreclosed arbitration because it said "any suit or proceeding brought hereunder shall be subject to the exclusive jurisdiction of the courts located in Texas." *Id.* at 395 (all caps omitted). The Court found the two provisions were not inconsistent; "suits" and "proceedings" referenced lawsuits, and meant only that if a party filed a *lawsuit*, rather than arbitration, it would go to the specified court. The Court thus compelled arbitration, even though the claims implicated the stock purchase agreement.

Likewise, the Fourth Circuit held, in *UBS Fin. Servs., Inc. v. Carilion Clinic*, that courts have found that "arbitration is not considered an action or a proceeding," as those terms refer to judicial disputes, and unless the subsequent agreement contains language specifically stating that arbitration was waived or superseded, such a clause would not override an arbitration agreement. 706 F.3d 319, 330 (4th Cir. 2013); *see also Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005) (forum selection clause that "does not even mention arbitration" does not supersede arbitration agreement; instead, it means only that *lawsuits* must be filed in the specified forum).

This authority is also fully consistent with Michigan's law on novation—which similarly provides that a court must harmonize parties' contracts wherever possible. *Omnicom of Michigan v. Giannetti Inv. Co.*, 221 Mich. App. 341 (1997).

3

Under *Omnicom*—which Barnett does not even cite, let alone distinguish—a second contract does <u>not</u> supersede a first contract unless it "completely covers the same subject" and the two agreements' terms are inconsistent with each other. *Id.* at 347.

Here, the SA governs the rights and obligations of shareholders, while the EAs govern the rights and obligations of employees, and thus do not "completely" cover the same topics. That, alone, is enough to reject Barnett's "novation" argument. *Id.*

There is also no inconsistency between the arbitration clause of the EAs and the forum selection clause in the SA. Unquestionably Barnett's claims arise "out of" the termination of his employment. The SA does not say anything about "arbitration" at all, let alone that it supersedes the EAs—and, under *Omnicom*, the specific mandate to arbitrate in the EAs is not abrogated by a subsequent agreement that does not mention arbitration. 221 Mich. App. at 347; *see also* cases cited at R. 30, Pg ID1312 n. 3. Rather, the SA says only that any "action" brought in connection with this Agreement must be brought in an Oakland County state or Eastern District federal court. This is even narrower than the language found not to create any conflict in *Personal Security*, *UBS*, *Bank Julius*, and similar cases cited in CMI's principal brief. *See*, R. 30, Pg ID 1312 n. 3. The two contracts are thus easily read in harmony.[2]

---

[2] Tellingly, Barnett's cited cases are facially inapplicable here. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444 (6th Cir. 2005) merely holds that where the parties agree to *terminate* an earlier contract containing the arbitration clause, a subsequent

## B. Because The Parties' EAs Govern, An Arbitrator Must Decide Whether Barnett's Claims Are Arbitrable.

As CMI explained in its opening brief, when the parties agree that an arbitrator will decide the question of arbitrability, then the arbitrator—and not the court—must make this decision, even if the district court believes the arguments in favor of arbitration are "wholly groundless." R. 30, Pg ID 1306 (citing *Schein v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019)). Here, the EAs apply the AAA's arbitration rules, and those rules state that the arbitrator decides questions regarding the "existence, scope, or validity of the arbitration agreement." R. 30-5, Pg ID 1365. Numerous courts have held that the parties' incorporation of the AAA rules into their arbitration agreement reflects a "clear and unmistakable" agreement to delegate questions of arbitrability to the arbitrator. R. 30, Pg ID 1306-7. That settles the matter.

Barnett does not dispute any of this, including the effect of incorporating AAA rules into an arbitration agreement. Instead, his argument presumes that the SA superseded the EAs, and asserts that because the SA does not contain an arbitration

---

agreement governs. There was no agreement to terminate the EAs here; Barnett's claim is one of implicit superseding, and that is governed by *Omnicron*. And in *GGNSC Louisville St. Matthews LLC v. Badgett*, 728 F. App'x 436, 440 (6th Cir. 2018), the subsequent agreement contained a check-box authorizing the signatory to expressly *decline* arbitration—and that specific language foreclosing arbitration was the reason the Court found a manifest inconsistency between the agreements. *Id.* at 441.

clause, there is no basis to send anything to arbitration in the first place. R. 35, Pg ID 1603-04. Barnett thus puts all of his eggs in the "novation" basket, effectively conceding that *if* the earlier EAs were not superseded by the SA, *then* the arbitrator must decide if his counterclaims are within the scope of the EAs.

The Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)—which Barnett cites, but misreads—is instructive. In *First Options*, the Court distinguished between two questions: *first*, did the parties agree to have an arbitrator decide questions of arbitrability, which is decided by state law governing the formation of contracts without any presumption in favor of having the arbitrator make that decision, *id.* at 944; *second*, however, if the parties did agree to have the arbitrator decide arbitrability, whether the disputes in question fall within the scope of the arbitration agreement, is presumptively to be decided by the arbitrator, *id.* at 945.

As CMI explains above, the parties undisputedly agreed to arbitrate and have the arbitrator decide questions of arbitrability. The only remaining question is who should decide whether Barnett's counterclaims "arise out of" the termination of Barnett's employment so as to fall within the scope of the parties' arbitration agreement. That question is plainly reserved for the arbitrator given the parties' agreement to incorporate AAA rules. *See*, cases cited at R. 30, Pg ID1306-1307. An arbitrator must decide, in the first instance, whether Barnett's counterclaims are

6

arbitrable or not. The Court thus should compel arbitration on all of Barnett's counterclaims.

## C. Alternatively, Barnett's Agreement To A Six-Month Statute Of Limitations Bars Most Of His Claims.

If this Court should find a claim asserted by Barnett is not arbitrable, then it must dismiss all non-ADA claims based on the agreed-to six-month statute of limitations.[3]

Barnett argues estoppel, relying on *Livonia Volkswagen, Inc. v. Universal Underwriters Grp.*, 2008 WL 880189, at *3 (E.D. Mich. Mar. 31, 2008). But that case rejected application of estoppel, because the plaintiff could not show she was intentionally misled by the defendant—something Barnett also has not pled or could show here. Barnett's argument that the SA's standard "no waiver" provision voids the EA's limitation clause has been rejected by the authorities cited in CMI's principal brief, *see*, R. 30, Page ID 1314-1315, which Barnett does not even attempt to distinguish.

Barnett also makes the peculiar argument that he can avoid the statute of limitations because his damages, which may be continuing, could not be calculated and remedied within the agreed-upon limitations period. R. 35, Pg ID 1606. No court

---

[3] CMI does not contend the six-month statute of limitations precludes Barnett from relying on the statutory provisions requiring filing of ADA charges with the EEOC. Barnett's charge is untimely, however, as to claims that arose six months or longer before he filed with the EEOC.

has ever so held. Barnett's argument would avoid the statute of limitations in most employment cases in which front pay must inevitably be calculated.

In *Thurman v. DiamlerChrysler*, 397 F.3d 352, 358 (6th Cir. 2004), plaintiff asserted various tort claims—all involving "continuing losses." The Court rejected the argument that the six-month contractual limitations period did not provide time for determining damages. During the limitations period, the plaintiff had full opportunity to "ascertain the damages suffered" by filing a first suit encompassing the underlying events at issue, filing an administrative complaint, and seeking medical and psychological treatment. *Id.* at 358.

*Thurman* forecloses Barnett's argument. Barnett hired counsel as soon as, and even before some of his claims arose. Barnett and his counsel sent CMI demands and a 207-paragraph *Arbitration* Demand draft pleading (*see*, R. 15-6), made settlement demands, filed an EEOC Charge, and met with health care providers throughout the statutory period. If the Court does not compel arbitration, then as in *Thurman*, Counts VI through XVI are untimely and must be dismissed.

### D. Alternatively, Barnett's Counts I-III, VI-VIII, and XI-XVI Do Not State A Claim.

While an arbitrator should address the viability of all of Barnett's counterclaims, the referenced Counts fail to state a claim that CMI has violated the SA. CMI does not assert that Plaintiff's allegation that he was terminated in violation of the ADA/PWDCRA fails to state a claim under Fed.R.Civ.P. 12(b)(6). Instead,

CMI contends that Barnett's claims for breach of the SA following his termination fail to state a claim.

Once Barnett's employment was terminated, CMI was mandated by the SA to redeem his stock. R. 30-6, Pg ID 1397-9. Given that CMI concluded that Barnett was disabled, as it did, it was required to apply section 4.2(b) of the SA, which required the offset of disability payments against the value of stock being redeemed. To do otherwise would have violated its duty to other shareholders to properly apply the terms of the SA. Barnett asserts that he was unlawfully terminated, and if he can prove that to an arbitrator he can then assert that the consequent reduction in the value of his stock is an aspect of damages. But he cannot independently claim violation of the SA because the SA mandated the manner in which his stock was redeemed. *See*, R. 30, Pg ID 1315-8. Barnett thus cannot assert breach of a fiduciary duty (Count XIV), breach of contract based on the SA (Counts I-III, VI-VIII, and XI), shareholder oppression (Count XIII), or conversion of his stock (Counts XV and XVI).

Nor can Barnett establish that Comerica lost its collateral, since CMI continues to be the guarantor on the loan, and neither Barnett nor CMI have breached a contract with Comerica, nullifying Barnett's argument that CMI somehow tortiously interfered with a contract (Count XII).

9

For the reasons provided in CMI's principal brief, most of which have not been addressed by Barnett, Counts I-III, VI-VIII, and XI-XVI fail to state claims and must be dismissed.

### E. Conclusion.

All of Barnett's claims must be arbitrated because it cannot be said with positive assurance that any of the claims should be outside the broad arbitration clause Barnett agreed to. Only if the Court were to find otherwise as to any of Barnett's claims should the Court address CMI's argument on the merits and dismiss such claims.

Respectfully submitted,

Dated: September 26, 2019      By: */s/Thomas G. Kienbaum*
Ryan D. Bohannon (P73394)
KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.
Attorneys for Plaintiff/Counter-Defendant
280 N. Old Woodward Ave., Suite 400
Birmingham, Michigan 48009
(248) 645-0000
tkienbaum@khvpf.com
rbohannon@khvpf.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2019, I caused to be electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification to all ECF participants.

<u>/s/Thomas G. Kienbaum</u>
Thomas G. Kienbaum
280 North Old Woodward, Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
tkienbaum@khvpf.com
(P15945)

344285